UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| BRENDA K. HAZLETT,<br><br>              Plaintiff,<br><br>   vs.<br><br>MICHAEL J. ASTRUE, Commissioner<br> of the Social Security Administration,<br><br>              Defendant. | 1:10-cv-0414-SEB-MJD |

## Entry Discussing Complaint for Judicial Review

Brenda K. Hazlett ("Hazlett") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed** and Hazlett's motions for summary judgment [16, 18] must be **denied.**

### I. Background

Hazlett applied for DIB on September 27, 2005, alleging an onset date of August 1, 2004. Her application was denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and a hearing was conducted on June 18, 2008. Hazlett was present but did not have an attorney. Medical and other records were introduced into evidence. Hazlett, a medical expert, and a vocational expert testified. The ALJ denied Hazlett's application on July 23, 2008. On September 25, 2008, Hazlett, by counsel, filed a request for review with the Appeals Council. On February 13, 2009, the Appeals Council remanded the matter with instructions to obtain additional evidence concerning the nature and severity of Hazlett's impairments. A second hearing was conducted on June 15, 2009. Hazlett was represented by counsel and Hazlett, two medical experts, and a vocational expert testified. On July 17, 2009, the ALJ again denied Hazlett's application. On February 5, 2010, the Appeals Council denied Hazlett's request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Hazlett last met the insured status requirements of the Act on December 31, 2005; (2) Hazlett had not engaged in substantial gainful activity during the period from her alleged onset date of August 1, 2004, through her date last insured of December 31, 2005; (3) through the date last insured, Hazlett had the following severe impairments: cervical spondylosis, ulnar neuropathy, right shoulder impingement syndrome, right cubital tunnel syndrome, fibromyalgia, osteoarthritis of the fingers, sleep apnea, narcolepsy, cataplexy, depression, panic disorder, and history of a conversion disorder although this appears to have been reversed later; (4) through the date last insured, Hazlett did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) through the date last insured, Hazlett had the residual functional capacity ("RFC") to perform light work, and more specifically she could sit and stand each for one hour at a time for a total of up to 6 hours in an 8-hour day, she could walk for one mile at a time for up to 4 hours in an 8-hour day, she could lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently, she could occasionally bend, stoop, kneel, climb stairs, and reach overhead with the right upper extremity, she should not climb ladders or scaffolds, work around unprotected heights or dangerous machinery, or perform commercial driving, the work should involve simple and repetitive tasks with regular expectations and no strict production quotas, and she should have only superficial contact with coworkers, supervisors, and the general public; (6) through the date last insured, Hazlett was unable to perform any past relevant work; (7) Hazlett was born on June 16, 1956, and was 49 years old, which is defined as a younger individual age 18-49, on the date last insured, and she subsequently changed age category to closely approaching advanced age; (8) Hazlett had at least a high school education and was able to communicate in English; (9) transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Hazlett was "not disabled" whether or not she had transferable job skills; and (10) through the date last insured, considering Hazlett's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Hazlett had not been under a "disability" as defined in the Act at any time from August 1, 2004, the alleged onset date, through December 31, 2005, the date last insured.

## II. Discussion

### A. Applicable Law

To be eligible for disability benefits, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id.* The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

In this case, the ALJ concluded that although Hazlett had severe impairments consisting of cervical spondylosis, ulnar neuropathy, right shoulder impingement syndrome, right cubital tunnel syndrome, fibromyalgia, osteoarthritis of the fingers, sleep apnea, narcolepsy, cataplexy, depression, panic disorder, and history of a conversion disorder, there were a significant number of jobs in the national economy that she could perform. (R. at 19, 30). The ALJ determined that Hazlett could perform light work with certain restrictions. (R. at 22). Hazlett argues that the ALJ's decision is not supported by substantial evidence.

The single challenge Hazlett presents in this case is to the weight given by the ALJ to the various medical source opinions. Hazlett argues that the ALJ ignored the opinions of each of the treating physicians and improperly gave more weight to the opinions of non-examining physicians.

"[T]he Social Security Administration is bound to give a treating physician's opinion controlling weight if her 'opinion on the issue(s) of the nature and severity of [the applicant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the applicant's] case record.'" *Allord v. Asture,* 631 F.3d 411, 416-17 (7th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)). "If an ALJ does not afford controlling weight to such an opinion, he or she must articulate sufficient reasons for not doing so." *Id.* at 417.

Hazlett first argues that treating physician Dr. Mick was in the best position to

3

provide a longitudinal picture of Hazlett's condition and that the ALJ erred in rejecting Dr. Mick's opinion. Dr. Mick reported on October 18, 2005, that Hazlett had been under his care for a year. (R. at 205). He listed her diagnoses as fibromyalgia since 1980, chronic neck pain, degenerative arthritis of the hips and shoulders, migraine headaches, and a prior history of ITP. *Id.* Dr. Mick opined that "[a]t this time she has basically no ability to do any meaningful type of work. She is barely keeping her head above water with regard to her own activities of daily living." *Id.* He further stated that "[p]hysically she is impaired with regard to whole-body pain, and mentally she has very little reserve with which to process mental tasks." *Id.*

As to Hazlett's functional limitations, the ALJ stated that he disagreed with Dr. Mick's opinion that Hazlett had "basically no ability to do any meaningful type of work." (R. at 28). The ALJ explained that this opinion was "without substantial support from the other evidence of record, which obviously renders it less persuasive." *Id.* The ALJ also reasoned that it was not clear whether Dr. Mick was familiar with the definition of "disability" contained in the Act. (R. at 29). Regardless of whether Dr. Mick was familiar with the applicable definition of "disability," the Commissioner properly asserts that it is well-established that the ultimate determination as to a claimant's disability is reserved to the Commissioner and that a treating physician's statement that a claimant is disabled or unable to work is not conclusive. *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000) ("A claimant, however, is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.'"); 20 C.F.R. §§ 404.1527(e) and 416.927(e) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). The ALJ did not ignore or mischaracterize Dr. Mick's treatment records or opinions. (R. at 25-29).

Hazlett also argues that the ALJ improperly rejected the opinion of treating neurologist Dr. Cook. Hazlett contends that the ALJ substituted his own lay opinion for that of Dr. Cook. Dr. Cook provided a Physical Residual Functional Capacity Questionnaire dated September 15, 2008. (R. at 242-46). He listed diagnoses of narcolepsy with cataplexy and sleep apnea. (R. at 242). If his opinions as to Hazlett's restrictions were accepted (could sit less than 2 hours and stand/walk about 4 hours in an 8 hour day, among other limitations), Hazlett would have been found disabled.

The ALJ discussed Dr. Cook's report, noting that Dr. Cook first saw Hazlett in March 2007, over a year after she was last insured. (R. at 29). Contrary to Hazlett's suggestion, the ALJ did not reject Dr. Cook's opinion on the sole basis that Dr. Cook diagnosed narcolepsy and cataplexy after the date Hazlett was last insured. The ALJ considered the substance of the report as well as the date of Dr. Cook's examination. "While the claimant may have had narcolepsy since childhood, as indicated by the reporting physician, there is no statement showing that the claimant was as limited as of December 31, 2005, as she reportedly is now." *Id.* Therefore, the ALJ gave Dr. Cook's opinion "little weight" because it was "without substantial support from the other evidence of record during the relevant period at issue." *Id.* Indeed, a diagnosis alone does not establish any particular functional limitations. *See Gentle v. Barnhart,* 430 F.3d 865, 868 (7th Cir. 2005) ("A person can [have

4

various physical or mental diagnoses] yet still perform full-time work.").

Hazlett contends that symptoms of narcolepsy and cataplexy had been noted in office notes prior to her date last insured and that the ALJ should have accepted Dr. Cook's opinion as having been supported by evidence prior to her date last insured. In essence, Hazlett asks the court to reweigh the evidence. It is well settled, however, that in conducting the court's limited review, it cannot reweigh evidence, resolve conflicts, or substitute our own judgment for that of the ALJ. *See Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). The ALJ did not err in considering the time frame of Dr. Cook's treatment of Hazlett nor in determining the severity of her impairments at the relevant time. The ALJ noted in his decision that medical expert Dr. Stevens testified that there was evidence of narcolepsy and obstructive sleep apnea in the record, but that Hazlett managed to work at times with those conditions without extensive treatment and there was no documentation regarding the number of attacks Hazlett had experienced. (R. at 27). The ALJ did not ignore Dr. Cook's RFC assessment. Rather, the ALJ adequately explained why he gave little weight to the opinion, and that explanation is supported by substantial evidence.

In arriving at his RFC determination, the ALJ noted that medical expert Dr. Stevens testified that Hazlett had been diagnosed with fibromyalgia with the appropriate number of trigger points. (R. at 27, 645). The ALJ discussed Dr. Stevens' testimony that Hazlett had an impingement syndrome which caused pain when her arms were elevated above shoulder level. (R. at 27, 646). Dr. Stevens testified that the record showed that Hazlett suffered from migraine headaches, but it did not reflect how often she had them. (R. at 27, 648, 653-55). He further noted that Hazlett was taking a migraine preventive medication, Topamax. (R. at 654). The ALJ acknowledged Dr. Stevens' opinion that even with all of Hazlett's physical impairments, she would be able to perform light exertional work with certain restrictions. (R. at 28, 650, 51). Those restrictions are reflected in the ALJ's RFC assessment. (R. at 22). With regard to Hazlett's back, neck and shoulder pain, the ALJ also reviewed the objective test results and records of examining physicians Dr. Shick and Dr. Tekula. (R. at 24-26). The ALJ's RFC determination is supported by substantial evidence.

One other assertion of error has been considered. Hazlett argues that when the ALJ reviewed her daily activities, he erroneously stated that "[s]he reported having assumed responsibility as a foster parent in August 2004." (R. at 21, 29). Hazlett asserts that she in fact stopped being a foster parent in August 2004. The ALJ's statement, however, is a direct quote from the report of examining psychologist Dr. Ceola Berry. (R. at 413) ("She reported having assumed responsibility as a foster parent in August of 2004."). In any event, the ALJ was clear in his decision that Hazlett had not engaged in any substantial gainful activity after August 1, 2004. (R. at 19). Moreover, the ALJ acknowledged that Hazlett had some difficulties in performing daily activities and in social functioning. (R. at 21, 29). There was no harmful error in this regard.

As noted above, the court's role in this case is not to attempt a *de novo* determination of Hazlett's entitlement to benefits, but to decide if the Commissioner's

decision was supported by substantial evidence. If the ALJ's view of the evidence is supported by substantial evidence, the court must affirm the decision. "An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). In this case, the ALJ sufficiently articulated his assessment of the evidence, including the opinions of the treating, examining and non-examining physicians, to enable the court to "trace the path of [his] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation and citation omitted). The ALJ's decision that Hazlett was not disabled from August 1, 2004, through December 31, 2005, is supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir.1995) ("An ALJ ... must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning."); s*ee Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) ("[W]e give the [ALJ's] opinion a commonsensical reading rather than nitpicking at it.") (internal quotation and citation omitted). Accordingly, because substantial evidence supports the ALJ's evaluation of Hazlett's impairments, the ALJ's decision must be affirmed.

### III. Conclusion

There was no reversible error in the assessment of Hazlett's application for DIB. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. Under these circumstances, Hazlett is not entitled to relief in this action. Hazlett's motions for summary judgment [16, 18] must be **denied.** Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 07/14/2011

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana